

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| MONKEY BAR, L.P., a New York Limited Partnership, and MONKEY BAR, INC., a General Partner, a New York Corporation, )<br><br>Plaintiffs,<br>v.<br><br>MONKEY BAR & GRILL OF PALM BEACH, INC., d/b/a THE MONKEY BAR AND GRILL, a Florida corporation,<br><br>Defendant. | Case No.: 98-8051-CIV-HURLEY<br>Magistrate Judge Frank J. Lynch, Jr. |

## MEMORANDUM OF LAW IN OPPOSITION
## TO MOTION FOR PRELIMINARY INJUNCTION

The defendant, Monkey Bar & Grill of Palm Beach, Inc. ("Monkey Bar & Grill"), by undersigned counsel, files this memorandum in opposition to plaintiffs' motion for a preliminary injunction.

The plaintiffs cannot prevail on their motion because they cannot establish the four requirements for injunctive relief: (i) that there is a substantial likelihood plaintiffs will succeed on the merits of their claims; (ii) that plaintiffs will suffer irreparable harm if injunctive relief is not entered; (iii) that the threatened injury to the plaintiffs outweighs the potential harm to the defendant as a result of the injunction; and (iv) that granting a injunction would not be adverse to the public interest. See, e.g., Haitian Refugee Center, Inc. v. Nelson, 872 F.2d 1555, 1561-

1

62 (11th Cir. 1989), aff'd sub nom. McNary v. Haitian Refugee Center, 498 U.S. 479 (1991). Because a preliminary injunction is a "drastic remedy," the plaintiffs bear the hearing burden of proof to "clearly establish" each of the four elements. Cafe 207 v. St. Johns County, 989 F.2d 1136, 1137 (11th Cir. 1993). See also Anheuser-Busch, Inc. v. A-B Distribs., Inc., 910 F. Supp. 587, 589 (M.D. Fla. 1995). Judge King has recently stated that a preliminary injunction "is an extraordinary remedy, not available unless the plaintiffs' carry the burden of persuasion as to all of the four prerequisites. The primary justification for granting a preliminary injunction is to preserve the court's ability to render a meaningful decision after a trial on the merits." Tefel v. Reno, 972 F.Supp. 623, 633 (S.D. Fla. 1997) (King, J.). The plaintiffs simply are not entitled to injunctive relief under these controlling standards.

Moreover, even under vastly different circumstances where a plaintiff has a federally registered mark and clearly superior rights to use it, an injunction will not issue -- not even after trial -- unless and until the plaintiff shows a likelihood of entry into the defendant's trade territory. See Dawn Donut Co. v. Hart's Food Stores, Inc., 267 F.2d 358 (2d Cir. 1959) (nationwide right does not ripen into injunctive remedy until the registrant shows likelihood of entry into the disputed territory); Sweetarts v. Sunline, Inc., 380 F.2d 923 (8th Cir. 1967) (denying plaintiff injunctive relief in states where plaintiff had no sales and in states where plaintiff's sales were "small, sporadic, or inconsequential"), on remand, 299 F. Supp. 572 (E.D. Mo. 1969), aff'd in part and rev'd in part, 436 F.2d 705 (8th Cir. 1971). See also National Footwear, Ltd. v. Hart Schaffner & Marx, 760 F.2d 1383 (3d Cir. 1985) (senior user found not to have established trademark rights outside of New Jersey); Accu Personnel v. Accustaff, Inc., 846 F. Supp. 1191 (D. Del. 1994).

I.     Lack of Substantial Likelihood of Plaintiffs Succeeding on the Merits

The plaintiffs must present compelling evidence that there is a likelihood that consumers will be confused about a relationship or affiliation between plaintiffs' one restaurant in New York, New York and defendant's one tropical entertainment establishment in West Palm Beach, Florida.  "Likelihood of confusion" means probable confusion rather than mere possible, or inadvertent, confusion.  Shatel Corp. v. Mao Ta Lumber & Yacht Corp., 697 F.2d 1352, 1356 n.2 (11th Cir. 1983).  Likelihood of confusion may not be found unless an "appreciable number of ordinarily prudent purchasers" are likely to be misled or confused as to the source of the goods or services in question.  E.g., Lord Jeff Knitting Co., Inc. v. Warnaco, Inc., 594 F. Supp. 579, 580 (S.D. N.Y. 1984).

The court of appeals has developed a seven factor test in this circuit to determine whether there is a likelihood of confusion between two trademarks.  A court must evaluate: (i) the strength or weakness of the plaintiffs' mark, (ii) the similarity of the parties' marks, (iii) the similarities of the products or services the marks identify, (iv) the similarity of the parties' retail outlets and purchasers, (v) the similarity of advertising media used by the parties; (vi) the existence of actual confusion, and (vii) the defendant's intent in adopting its mark.  See Dieter v. B & H Indus. of Southwest Fla., Inc., 880 F.2d 322 (11th Cir. 1989); Freedom Sav. & Loan Ass'n v. Way, 757 F.2d 1176 (11th Cir. 1987).  The issue of likelihood of confusion is not determined by merely analyzing whether a majority of the seven factors indicates that such a likelihood exists.  Rather, the court must evaluate the weight to be accorded each factor.  The appropriate weight to be given to each of the factors varies with the circumstances of each case. See Ambrit, Inc. v. Kraft, Inc., 805 F.2d 974, 981-82 (11th Cir. 1986).

A.  Lack of Strength of Plaintiffs' Mark

Marks incorporating common English words like "monkey" and "bar" and "monkey bars" (the playground toy) are inherently weaker than marks consisting of fanciful and fictitious terms such as "Exxon" or "Xerox." See Dieter, 880 F.2d at 327; Sun Banks of Fla. v. Sun Federal Savings & Loan, 651 F.2d 311, 316 (5th Cir. 1981) (common English term is a weak mark)[1]; Michael Caruso & Co. v. Estefan Enterprises, Inc., Case No. 97-2993-CIV-KING (S.D. Fla., Feb. 12, 1998).

This rule applies even in situations where, as plaintiffs argue here, the common words are arbitrarily applied to a service or product, see Sun Banks, 651 F.2d at 315-16 (arbitrariness does not afford absolute protection); Amstar Corp. v. Domino's Pizza, Inc., 615 F.2d 252, 260 (5th Cir. 1980) (arbitrary application of common term not to be accorded same degree of protection given such coined and fanciful terms as "Kodak" or "Xerox"), and in situations where, as is not the case here, a plaintiff's stronger federally registered trademark has archived incontestable status. See Dieter, 880 F.2d at 328-29 (incontestable status is a factor of a mark's strength); Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 934 (4th Cir. 1995)(incontestability alone does not establish strong mark or sufficient likelihood of consumer confusion); Miss World (U.K.) Ltd. v. Mrs. America Pageants, Inc., 856 F.2d 1445, 1448-49 (9th Cir. 1988) (same).

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc) the Court of Appeals for the Eleventh Circuit adopted as binding precedent all decisions of the court of appeals for the former Fifth Circuit issued before October 1, 1981. All decisions of the former Fifth Circuit cited in this memorandum are of that nature.

4

Plaintiffs' mark is further weakened by the various uses by others of the terms "Monkey Bar" in their marks. See Sun Banks, 651 F.2d at 315-16 (finding the term "sun" a weak mark because of third-party usage); Amstar Corp., 615 F.2d at 260 (same, for term "domino"); Armstrong Cork Co. v. World Carpets, Inc., 597 F.2d 496, 505 (5th Cir. 1979); EL Chico, Inc. v. EL Chico Cafe, 214 F.2d 721, 725 (5th Cir. 1954) (same, for restaurants named "EL Chico"); Michael Caruso & Co. v. Estefan Enterprises, Inc., supra (same, for term "Bongo").

Moreover, simply because Plaintiffs' mark may have been in existence for a number of years does not establish that it is "world renowned" as plaintiffs overstate in their motion. See, e.g., Star Markets, Ltd. v. Texaco, Inc., 950 F. Supp. 1030, 1035 (D. Haw. 1996)(mark used for 46 years not "famous"). Neither does the fact that plaintiffs' mark may enjoy some recognition in a particular geographic area or niche market engender it immediate recognition in the general public of a particular product or service. King of the Mountain Sports, Inc. v. Chrysler Corp., 968 F. Supp. 568, 578 (D. Colo. 1997); Cf. Golden Bear International, Inc. v. Bear U.S.A., Inc., 969 F. Supp. 742, 749 (N.D. Ga. 1996) (although Jack Nickalaus's "Golden Bear" mark is distinctive in particular market, it does not rise to the level of marks that have been found to be generally famous).

Contrary to their bold assertion, Plaintiffs' mark simply is not comparable to the mark and logo in Stork Restaurant, Inc., v. Sahati, 166 F.2d 348 (9th Cir. 1948). In that case, decided under California state law principles and after a full trial, newsreels had described the Stork Club as "the best and most publicized night club in the entire world." The Stork Club advertised extensively on national radio and in newspapers, magazines, and books. A motion

5

picture entitled "The Stork Club" was produced by Paramount Pictures and give 14,457 exhibitions throughout the United States, during a run of 59 weeks, and was given 532 showings during a run of 60 weeks in the specific area of defendant's use of the identical mark and logo. In one theater alone in defendant's territory of operation, The Stork Club movie was viewed by 83,729 people. The plaintiff's stork club was also specifically mentioned in many national hook-up radio programs of Bing Crosby, Frank Sinatra, Eddie Cantor, Walter Winchell, Jack Benny, Jimmy Durante, and Fred Allen. See generally 166 F.2d at 350-51. There was no evidence in Stork Restaurant of any usage of the mark by any other persons.[2]

EL Chico, Inc. v. EL Chico Cafe, 214 F.2d 721 (5th Cir. 1954), a controlling precedent in this circuit, see footnote 1 supra, is a much more appropriate case from which to analyze plaintiffs' motion for a preliminary injunction. In that case, even though the record showed that the plaintiff's EL Chico restaurant in New York, New York had acquired "national and international fame," 214 F.2d at 722; (a factual issue disputed by the defendant here concerning the use of "Monkey Bar" or any variation), and even though plaintiff's EL Chico restaurant "has consistently enjoyed very wide and favorable publicity through newspapers, periodicals, and trade publications, extensive radio broadcasting and presently through radio and television appearances of the EL Chico entertainers and musicians," id.; the defendant's EL

---

[2]In another well known case, Ambassador East, Inc. v. Shelton Corners, Inc., 120 F. Supp. 551 (S.D. N.Y. 1954), which granted an injunction to enjoin a restaurant in New York from using "Pump Room," the district court first concluded: "When the Pump Room is spoken of in America, I am convinced that the reference is generally understood to mean the plaintiff's establishment in Chicago." Id. at 553. Those words simply cannot be used to describe anyone's use of the phrase "Monkey Bar."

6

Chico Cafe in Dallas, Texas was not enjoined because of the geographic disparity and the other uses of the phrase EL Chico or Chico by other persons. See 214 F.2d at 725.

The plaintiffs in this action are not the exclusive users of the words "Monkey" and "Bar" whether separately or in combination. The evidence will show many uses by others of those terms in combination in the restaurant or bar businesses around the United States. For all of the foregoing reasons, the Court should determine it is unlikely Plaintiffs' mark has sufficiently strong trademark significance for an injunctive to issue.

B.  Comparison of Parties' Marks for "Similarity"

The plaintiffs' mark and the defendant's mark are not identical. Marks are to be examined in their entirety, rather than simply comparing the similar terms or dominant features of each. Likelihood of confusion cannot be predicated on dissection of a mark or on part of a mark. Franklin Mint Corp. v. Master Mfg. Co., 667 F.2d 1005, 1007 (CCPA 1981) ("It is axiomatic that a mark should not be dissected and considered piecemeal; rather it must be considered as a whole . . ."). The mere fact that both marks incorporate common words does not render the marks "similar" for preliminary injunction analysis. See, e.g., Sun Banks, 651 F.2d at 316; Bell Laboratories, Inc. v. Colonial Prods., Inc., 644 F. Supp. 542, 547 (S.D. Fla. 1986) ("Final flip" not similar to "Flip" for same product); Little Caesar Enterprises, Inc. v. Pizza Caesar, Inc., 835 F.2d 568, 471 (6th Cir. 1987) ("Pizza Caesar U.S.A." not similar to "Little Caesar's"); Conde Nast Pubs., Inc. v. Miss Quality, Inc., 507 F.2d 1404, 1407 (CCPA 1975)("County Vogues" and "Vogue" publications not similar).

7

C. <u>Comparison of the Parties' Goods and Services for "Similarity"</u>

The evidence will show that the plaintiffs' restaurant establishment on East 54th Street in New York, New York offers a dining product and service dramatically different from the entertainment services and food the defendant offers on Clematis Street in West Palm Beach, Florida. The plaintiffs describe their establishment as one for elegant dining, whether at lunch or dinner, featuring a master chef and expensive, sit-down meals. Reservations are recommended; jackets for the gentlemen are required. The defendants establishment -- 1,300 miles south of New York City -- is an upbeat, tropical, Key West style disco with a large dance floor and scattered bar areas that serve beverages and finger foods. It's slogan is "Come Downtown and Monkey Around." Defendant's establishment does not open until 8 p.m. (it is closed on Mondays), and it features loud rock-n-roll music with a disc jockey and all night dancing. The factual differences between the two establishments perhaps could not be more dramatic.

D. <u>Comparison of the Parties' Retail Outlets and Customers for "Similarity"</u>

Plaintiffs are unlikely to prove that the parties retail outlets and customers are similar. The substantial geographic separation significantly decreases the likelihood of confusion. <u>Cf</u>. <u>Dieter</u>, 880 F.2d at 327 (finding a relatively small geographic area, Southwest Florida, in which the plaintiff and defendant competed against each other). Defendant only provides their entertainment services at one establishment on Clematis Street in West Palm Beach, Florida. The plaintiffs only provide their restaurant services at one establishment in mid-town New York, New York. Neither is a chain operation or franchise, and their customer classes and operations are dramatically different. <u>See</u> Item C, <u>supra</u>. These circumstances are

8

a far cry from the facts in Lincoln Restaurant Corp. v. Wolfies Restaurant, Inc., 291 F.2d 302 (2d Cir. 1961), a case heavily relied on by the plaintiffs, in which 50 to 60 percent of the plaintiffs' patrons at their two restaurants in Miami Beach were from Brooklyn, New York where defendant, with fraudulent intent, opened its Wolfies restaurant. See 291 F.2d at 303. As the court noted:

> The defendant did little if anything [ ] to dispel the possible belief of its customers that they were eating in a Brooklyn branch of plaintiffs' enterprises. Indeed, such a belief was apparently encouraged by a menu similar in color and format to that of plaintiffs', which featured such items as "Wolfie's Floridian Style French Toast," "Wolfies' Floridian Style Fountain Creations," and Wolfie's Floridian Style Sundae Delights." All this evidence lends solid support . . . that defendant's adoption of the name "Wolfies" is compatible with nothing but "a purpose to capitalize in Brooklyn upon the trade name "Wolfies" first adopted by the plaintiffs in Miami Beach.

291 F.2d at 303. The defendant's fraudulent misappropriation of the Wolfies mark and the use of the mark in a special way in a particular area from which plaintiff's customers originated makes the case very different from the facts in the present action.

E.   Comparison of the Parties' Advertising for "Similarity"

Defendant's advertising is local in nature, using local radio spots directed to local listeners in West Palm Beach. In anticipation of its grand opening, the defendants advertised twice in Ocean Drive, a South Florida magazine that focuses on the Miami - Fort Lauderdale - Palm Beach corridor and did one direct mailing to friends and to names primarily provided by the West Palm Beach Downtown Development Authority. It does no other magazine or newspaper advertising.

Plaintiffs have never advertised in Ocean Drive magazine or on any television or radio station in the state of Florida or elsewhere or in any newspaper in Florida or

elsewhere. The plaintiffs have not in anyway entered the West Palm Beach market with advertising or actual sales. There have been sporadic stories written about plaintiffs' restaurant in articles about New York (but not in The Palm Beach Post) and an article or two about the defendant in The Palm Beach Post; but those articles should not be construed as advertising to determine similarity of advertising. In any event, the amount is not significant, and the articles are certainly not similar or in the same publications. Contrary to overstatements in their moving papers (see Plaintiffs' Memorandum of Law at 12, 15), the plaintiffs do not regularly advertise in the New York Times. And, according to statements of their principal, with the exception of one story, the plaintiffs have never advertised in the New York Times but may have advertised in New York Magazine, a different publication, approximately only once or twice a year during the past two years. There is no evidence that the parties' advertising is substantially similar. Even if injunctive relief were to be considered appropriate somewhere else in the county, it certainly would not be appropriate here. Wiener King, Inc. v. Wiener King Corp., 615 F.2d 512 (C.C.P.A. 1980) (plaintiff's protection limited to area of sales but not to its claimed zone of reputation or expansion).

    F.    <u>Evaluation of Whether Actual Confusion Exists</u>

In First Southern Fed. Sav. v. First Southern Sav., 614 F.2d 71, 72 (5th Cir. 1980), the court of appeals determined no likelihood of confusion between different banks in the same town using the same words as part of their names, even though several instances of actual confusion had occurred. Similarly, in Sun Banks of Florida, Inc. v. Sun Federal Savings and Loan Ass'n, 651 F.2d 311, 319 (5th Cir. 1981), when confronted with 19 instances of confusion involving mostly non-customers of the defendant bank, the court of appeals determined

10

insufficient evidence of likelihood of confusion. That the principal of the plaintiffs, while visiting friends on Palm Beach, may have been asked whether there is any relationship between his New York restaurant and the defendant -- after telling people the name of his New York restaurant -- is simply not the type of confusion that the law determines as significant. See Sun Banks, 651 F.2d at 319.

G. Defendant's Intent

Plaintiffs have not presented evidence that defendant acted in bad faith by naming its establishment "Monkey Bar and Grill." The defendant simply did not adopt its mark "with the intention of capitalizing on plaintiffs' reputation and good-will and any confusion between" their products and services. See The Sports Authority, Inc. v. Prime Hospitality Corp., 87 F.3d. 955, 964 (2d Cir. 1996). The origin of defendant's name is completely unrelated to the plaintiffs' establishment.

Fraudulent intent of the defendant was an important fact supporting the court's decision in Stork Restaurant, Inc. See, e.g., 166 F.2d at 352 (use of plaintiff's exact mark: "Napkins used in defendant's establishment carried the picture of a stork standing on one leg and wearing a high hat, with the legend, Stork Club"); id. at 355 ("there is little likelihood that the [plaintiff and the defendant] hit upon the names . . . as acts of independent creation"); id. at 355-56. See also EL Chico, Inc. v. EL Chico Cafe, 214 F.2d at 725 (stating that Stork Restaurant, Inc. involved express fraudulent intent of defendant). Fraudulent intent likewise was a crucial fact in the "Wolfies" case. See 291 F.2d at 303 & 304 (dissenting opinion).

There is no similar showing of intent here that would support injunctive relief of any kind.

11

II. <u>Lack of Irreparable Harm to Plaintiffs in Absence of Injunction</u>

There has been no showing, beyond a general statement of theory, that plaintiff will suffer irreparable harm in the absence of an injunction. An injunction should therefore not be issued.

III. <u>Potential Harm to Defendant</u>

Enjoining defendant's use of its trademark would cause substantial harm to defendant. The defendant has spent nearly $1.5 million on its "Monkey Bar & Grill" establishment. The great harm posed to defendant by an injunction is not justified. See <u>Michael Caruso & Co. v. Estefan Enterprises, Inc.</u>, Case No. 97-2993-CIV-KING (S.D. Fla., Feb. 12, 1998).

IV. <u>Public Interest</u>

A preliminary injunction, by its very nature, is an extraordinary remedy to be used only sparingly in order to promote the public's interest. <u>Tefel v. Reno</u>, <u>supra</u>. There is no identifiable public interest that would compel an injunction as appropriate under the circumstances here. Indeed, just the opposite is true. The public interest demands that no injunction be entered. The absence of a strong showing of likelihood of consumer confusion means that the public interest will not be served by preventing defendant from continuing its business as is.

## CONCLUSION

The motion for preliminary injunction should be denied.

Dated: February 26, 1998

LEVY, KNEEN, MARIANI, CURTIN,
WIENER, KORNFELD & del RUSSO, P.A.
Counsel for Defendant, Monkey Bar & Grill
of Palm Beach, Inc.
1400 Centrepark Blvd., #1000
West Palm Beach, Florida  33401
Phone:  (561) 478-4700
Fax:    (561) 478-5811

By: _____
    John F. Mariani
    Fla. Bar No. 0263524

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been served by hand delivery this 26th day of February, 1998, to the offices of J. Rodman Steele, Jr., Esq. or Joseph W. Bain, Esq., Quarles & Brady, Esperante Building, 4th Floor, 222 Lakeview Avenue, P.O. Box 3188, West Palm Beach, FL 33402-3188, fax number (561) 653-5333 and by United States mail to Anderson & Rottenberg, P.C., 369 Lexington Avenue, Sixteenth Floor, New York, NY 10017, fax number (212) 867-1914.

John F. Mariani